UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-cr-30044-MGM |
| | ) | |
| [15] RICHARD ROSARIO, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO COMPEL
DISCOVERY AND FOR SANCTIONS
(Dkt. No. 579)

ROBERTSON, U.S.M.J.

I.    INTRODUCTION

This matter is before the court on the motion of Defendant Richard Rosario

("Defendant") seeking discovery (Dkt. No. 579).  The government represents that it has provided

Defendant with all existing recorded oral, wire, and electronic communications, including

recordings of conversations obtained from wire interceptions of two co-conspirators' telephones.

According to the government, it has not identified Defendant's voice on the recordings of the

intercepted conversations.  Notwithstanding this disclosure, Defendant asks the court to compel

the government to take additional measures to attempt to identify Defendant's voice and, if it

fails to do so, to exclude evidence of Defendant's conversations at trial.  For the reasons that

follow, Defendant's motion is DENIED.

II.    PROCEDURAL AND FACTUAL BACKGROUND

Defendant is charged in a second superseding indictment with one count of conspiring to

distribute heroin and to possess heroin with intent to distribute, in violation of 21 U.S.C. § 846

1

(Dkt. No. 293). The charge arose from the Drug Enforcement Administration's ("DEA") investigation into a large-scale heroin distribution operation conducted by members of the Alberto Marte Drug Trafficking Organization (the "Marte DTO") in Springfield, Massachusetts (Dkt. No. 591 at 1).

As part of the investigation, the DEA obtained the district court's authorization to conduct wiretaps on the telephones of two members of the Marte DTO, Marte and Jiovanni Rodriguez (*id.* at 2). According to the government,

> Marte possessed at least two cellular telephones at any given time and frequently changed telephones in order to evade detection by law enforcement agents. When Marte changed his own cellular telephone, he also provided new telephones to members of the DTO, who would then use these telephones in order to conduct their illicit narcotics distribution activities. Each of those telephones were subscribed to a fictional name or no name at all. The efforts of the Marte DTO to obscure the users of the cellular telephones in this manner made identifying the users of the phones difficult, if not impossible.

(*id.*). The interceptions of Marte's and Rodriguez's phones spanned the period from about April 15, 2016 to September 22, 2016 (*id.* at 1-2).

The government alleges that the Marte DTO retrieved heroin from the Bronx, New York and transported it to various heroin mills in Springfield where it was packaged and distributed for sale (*id.* at 2). On September 22, 2016, investigators executed a search warrant at the organization's heroin mill at 156 Lebanon Street in Springfield and seized what the government believed to be Defendant's cellular telephone ("Defendant's cell phone") and more than three kilograms of heroin (*id.* at 2-3). According to the government, Defendant participated in the Marte DTO by packaging heroin (*id.* at 2). Defendant contends that the charge against him is based solely on the statements of co-conspirators who are cooperating with the government (Dkt. No. 580 at 1).

The parties agree that the government has provided Defendant with the complete recordings of all the interceptions made on the court-authorized wiretaps (Dkt. No. 565 at 1; Dkt. No. 571 at 1). "The recordings are organized into several databases that are searchable by a number of fields, including telephone number and date. The databases also include completely translated transcripts or summaries of each intercepted phone call and text message" (Dkt. No. 591 at 3).

At Defendant's request, the government searched the database for the telephone number of Defendant's cell phone (Dkt. No. 571 at 1-2; Dkt. No. 591 at 3). The search revealed that Defendant's cell phone was not intercepted (*id.*). The government has not identified any other cell phone that Defendant used (Dkt. No. 591 at 3).

By letter of August 30, 2018, Defendant, through counsel, acknowledged receipt of "hundreds of recorded phone and text intercepts" contained on fourteen CDs and one thumb drive (Dkt. No. 565 at 1; Dkt. No. 580 at 2). Relying on Fed. R. Crim. P. 16(a)(1)(B)(i), Defendant asked the government to identify all recorded statements that he allegedly made (Dkt. No. 565 at 1-2).

The government's responsive letter of September 13, 2018 denied Defendant's request for identification of his voice on the ground that provision of that information exceeded the scope of the government's obligation under Rule 16 and LR 116 (Dkt. No. 571 at 1-2). According to the government, it had complied with its discovery obligation by disclosing all of the intercepted communications (Dkt. No. 571 at 1-2). The Assistant United States Attorney indicated that Defendant's voice had not been identified on the recordings of the wire interceptions and acknowledged his duty to inform Defendant if his voice was identified in the future (*id.*).

Defendant moved to compel the government to identify Defendant's conversations on the previously provided recordings (Dkt. No. 579). The government responded (Dkt. No. 591) and Defendant replied (Dkt. No. 595).

III.     DISCUSSION

Defendant relies on Fed. R. Crim. P. 16(a)(1)(B)(i), LR 116(c)(1)(A), and *Brady v. Maryland,* 373 U.S. 83 (1963) (*Brady*), and its progeny for his position that the government is required to identify the communications, if any, in which he participated. The government counters that it has complied with its discovery obligations by providing Defendant with all of the intercepted communications and by searching the database for Defendant's cell phone number. The Assistant United States Attorney offered to assist Defendant's counsel in additional searches of the database. In addition, according to the government, Defendant is in a better position to know whether he called the phones of Marte and Rodriguez during the relevant time period. In the court's view, the law supports the government's position.

A. Fed R. Crim. P. 16(a)(1)(B)(i) & LR 116.1

Rule 16(a)(1)(B)(i) provides:

> Upon a defendant's request, the government must disclose to the defendant . . . any relevant written or recorded statement by the defendant if: the statement is within the government's possession, custody, or control; and the attorney for the government knows — or through due diligence could know — that the statement exists.

Fed. R. Civ. P. 16(a)(1)(B)(i). Local Rule 116.1(c)(1)(A), which addresses automatic discovery by the government, incorporates Fed. R. Crim. P. 16(a)(1)(B). *See* LR 116.1(c)(1)(A).

Rule 16(a)(1)(B)(i)

> establishes four requirements for disclosure of information to defendants: first, the rule governs only a written or recorded statement of a defendant; second, the statement must be relevant; third, the Government must have possession, custody or control of the statement; and, fourth, the attorney for the Government must know of the statement's existence (or could know of it, with due diligence).

*United States v. Pesaturo*, 519 F. Supp. 2d 177, 187 (D. Mass. 2007). Defendant contends that the government has not complied with the fourth element; that is, it has not exercised the requisite due diligence in identifying Defendant's statements among the intercepted materials that it has produced in discovery. Defendant gives the following examples of steps the government could take to comply with its due diligence obligation: inquire "of all the officers and agents for the government who monitored, interpreted and reviewed the intercepts to see if they know whether any of the intercepts include communications by [Defendant];" ask cooperating co-conspirators if they "spoke to [Defendant] by cell phone or communicated by text" and "if they could identify [Defendant's] voice if they heard it"; or obtain a "digitalized" voice exemplar from recorded phone calls in which Defendant participated at a federal detention facility and compare it to "digitalized" voices on the intercepted conversations (Dkt. No. 580 at 4-5 n.2).

Defendant misconstrues the meaning of "due diligence." "Diligence" is "the attention and care required from a person in a given situation." *Diligence*, BLACK'S LAW DICTIONARY (9th ed. 2009). "Due diligence" is "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." *Due Diligence,* BLACK'S LAW DICTIONARY. The government fulfilled its due diligence obligation under the rule by producing all intercepted communications, searching the database for the number of the telephone that it associated with Defendant, and notifying Defendant that no conversations from that telephone were intercepted. Defendant cites no authority for his position that the government was required to take additional affirmative steps to specifically identify his communications. Indeed, other courts have refused defendants' requests for orders similar to the one Defendant seeks. "The government has no obligation to identify for the defendant and his counsel those conversations . . . that include the defendant." *United States v.*

*Clarke*, No. CR-07-776 (ERK)(VVP), 2008 WL 2228991, at *10 (E.D.N.Y. May 28, 2008).

Because the defendant is in the best position to identify his own voice, the conversations in

which he participated, and the cell phones that he used, "it is up to the defendant and his counsel

to review the [discovery material] to locate all the conversations in which he participated." *Id.*

*See United States v. Dominguez*, Criminal Action H-17-651-4, 2018 WL 2057442, at *1 (S.D.

Tex. May 3, 2018) (where the government supplied defendant with copies of audio recordings,

defendant's request for "an index listing the specific time(s) and specific date(s) the [g]overnment

posits or opines that this [d]efendant can be . . . seen or heard" on the recordings was denied);

*United States v. Jackson*, Criminal No. 4:09CR66-WAP-DAS, 2009 WL 3011649, at *1 (N.D.

Miss. Sept. 16, 2009) (where the government produced a CD containing recorded telephone

conversations, the court rejected the defendant's request for an order "'requiring the government

to list by date, time, and identification number which conversations allegedly relate to or contain

[her] voice'" because "nothing in [Fed. R. Crim. P. 16] provides that she is entitled to the detailed

information she seeks."); *Clarke*, 2008 WL 2228991, at *9-10 (denying defendant's request to

have the government identify his conversations and finding that the government satisfied its

discovery obligations by providing the defendant with a CD containing audio recordings of all

conversations intercepted during the investigation and assisting defendant's counsel in

identifying and obtaining information from the CD).  Accordingly, Rule 16(a)(1)(B)(i) presents

no basis for the court to allow Defendant's motion to compel.

    B.  *Brady v. Maryland*

Defendant fares no better under *Brady*.  At the outset, "*Brady* is not a rule of pretrial

discovery."  *United States v. Valencia-Lucena*, 925 F.2d 506, 513 (1st Cir. 1991).  See *United

States v. Prochilo*, 629 F.3d 264, 269 (1st Cir. 2011) ("*Brady* did not create a broad rule of

discovery in criminal cases.").  The Supreme Court formulated the *Brady* rule in a post-conviction proceeding finding "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87.  "There are three components of a true *Brady* violation:  [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  In the pretrial context, *Brady* requires the prosecution to disclose evidence in its possession that is favorable to the defendant either because it is exculpatory or because it is impeaching in nature. *See Prochilo*, 629 F.3d at 268 (citing *Strickler*, 527 U.S. at 280; *Brady*, 373 U.S. at 87).  The government's disclosure of *Brady* material must come in time to allow the defendant to use it effectively at trial. *See United States v. Urciuoli*, 470 F. Supp. 2d 109, 115 (D.R.I. 2007) ("The only requirement is that *Brady* material be provided far enough in advance of trial to permit a defendant to make effective use of it.") (citing *United States v. Allain,* 671 F.2d 248, 255 (7th Cir. 1982)); *United States v. LaRouche Campaign*, 695 F. Supp. 1290, 1296 (D. Mass. 1988).

Turning to the government's obligations in this case, it has disclosed exculpatory information:  the government has informed Defendant that it has not identified his voice on any intercepted calls that were made between Defendant's cell phone and the phones of the two co-conspirators who were the targets of the interceptions (Dkt. No. 571 at 1-2).  In addition, the government has not suppressed the evidence that Defendant seeks by his motion to compel.  Because it is equally available to Defendant by the exercise of due diligence, "'the government is not obligated under *Brady* to produce it.'" *United States v. Peake*, Criminal No. 11-512 (DRD),

2016 WL 8234673, at *3 (D.P.R. Oct. 18, 2016), *aff'd,* 874 F.3d 65 (1st Cir. 2017) (quoting 2 CHARLES ALAN WRIGHT, ANDREW D. LIEPOLD, PETER J. HENNING & SARAH N. WELLING, FEDERAL PRACTICE AND PROCEDURE § 256 (4th ed. Supp. April 2015)). *See United States v. Roane*, 378 F.3d 382, 402 (4th Cir. 2004) ("[I]nformation actually known by the defendant falls outside the ambit of the *Brady* rule."). "'While the Supreme Court in *Brady* held that the government may not properly conceal exculpatory evidence from a defendant, it does not place any burden upon the government to conduct a defendant's investigation or assist in the presentation of the defense's case.'" *United States v. White,* 970 F.2d 328, 337 (7th Cir. 1992) (quoting *United States v. Marrero,* 904 F.2d 251, 261 (5th Cir. 1990)). Defendant stands in a superior position vis-à-vis the government regarding the ability to recognize his own voice and identify the numbers of cell phones that he used to contact the targets of the wire intercepts. Accordingly, Defendant fails to demonstrate that *Brady* requires the court to grant the relief that he seeks.

     C.  Defendant's Request for an Evidentiary Hearing and for Sanctions

As to the recordings of the court authorized interceptions, the government has satisfied its discovery obligations under Fed. R. Crim. P. 16(a)(1)(B)(i) and *Brady*. Accordingly, there is no basis for the court to grant Defendant's request for an evidentiary hearing and for sanctions.

IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Discovery and for Sanctions (Dkt. No. 579) is DENIED.

It is so ordered.

Dated:  December 3, 2018             /s/ Katherine A. Robertson
                                    KATHERINE A. ROBERTSON
                                    U.S. MAGISTRATE JUDGE